# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHERYL WULTZ, YEKUTIEL WULTZ, AMANDA WULTZ, and A.L.W., a minor, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Miscellaneous No. 13-1282 (RBW) |
| BANK OF CHINA, LTD, | ) ) | |
| Defendant, | ) ) | |
| RIVKA MARTHA MORIAH, et al., | ) ) ) | |
| Intervenors, | ) ) | |
| THE STATE OF ISRAEL, | ) ) ) | |
| Movant. | ) ) | |

## MEMORANDUM OPINION

On November 15, 2013, the State of Israel ("Israel") filed a motion with this Court to quash the third party deposition subpoena issued to former Israeli national security officer Uzi Shaya in connection with litigation pending in the United States District Court for the Southern District of New York ("Israel's Mot."). Both the plaintiffs in the above captioned matter and the intervenors oppose Israel's motion. Respondents' Memorandum of Law in Opposition to Petitioner's Motion to Quash, ECF No. 18; Intervenor-Plaintiffs' Memorandum of Law in Opposition to Non-Party State of Israel's Motion to Quash Subpoena, ECF No. 21. On December 2, 2013, the intervenors filed their Motion of Intervenor-Plaintiffs to Strike Non-Party State of Israel's Motion to Quash on the Ground that the State of Israel has not Moved to

1

Intervene in This Case, and in the Alternative[,] to Transfer This Proceeding to the Southern District of New York ("Intervenors' Mot."). Israel opposes the Intervenors' motion. After carefully considering the parties' submissions,[1] the Court concludes that it must deny in part and grant in part the intervenors' motion, and for the following reasons, Israel's motion to quash and all related filings, which includes the component of the intervenors' motion that seeks to have Israel's motion to quash stricken, are transferred to the Southern District of New York.

## I. BACKGROUND

### A. The New York Litigation[2]

In 2009, the plaintiffs filed a lawsuit in this district against the Bank of China, Ltd. ("Bank") seeking to establish the Bank's liability for the 2006 terrorist attack in Tel Aviv, Israel that resulted in the death of sixteen-year-old American citizen Daniel Wultz. Israel's Mem. at 2–3. Another member of this Court transferred the plaintiffs' lawsuit to the Southern District of New York after finding that this Court did not have jurisdiction over the Bank. Id. at 2–3. The

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Law in Support of the State of Israel's Motion to Quash ("Israel's Mem."); (2) the intervenors' Supplemental Memorandum of Law in Support of Motion to Strike Non-Party State of Israel's Motion to Quash on the Ground that the State of Israel has not Moved to Intervene in this Case, or in the Alternative to Transfer this Proceeding to the Southern District of New York ("Intervenors' Supp. Mem."); (3) the November 15, 2013 Order of Judge Shira Scheindlin in Wultz v. Bank of China Ltd., No. 11-cv-1266 (SAS) (S.D.N.Y.), ECF No. 394 ("Judge Scheindlin's Order"); (4) the State of Israel's Memorandum of Law in Opposition to the Intervenors' Motion to Strike or Transfer ("Israel's Opp'n"); (5) the Reply in Support of Intervenor-Plaintiffs' Motion to Strike Non-Party State of Israel's Motion to Quash or, in the Alternative, to Transfer this Proceeding to the Southern District of New York ("Intervenors' Reply"); (6) the September 27, 2013 Letter of Judge Scheindlin to the Israeli Department of International Affairs, Wultz v. Bank of China Ltd., No. 11-cv-1266 (SAS) (S.D.N.Y.), ECF No. 337 ("Judge Scheindlin's Letter"); and (7) the December 4, 2013 Letter from attorney John B. Bellinger III titled "Notices of Deposition of Yaacov Amidror and Matan Vilnai," Intervenors' Supp. Mem., Exhibit ("Ex.") A ("Bellinger Letter").

[2] The Court refers to the above-captioned case and the intervenors' five pending cases collectively as "the New York litigation." See Intervenors' Mot. at 3 n.1.

2

case was then assigned to Judge Shira Scheindlin of the Southern District of New York, and she is currently presiding over that litigation. Intervenors' Mot. at 3 n.1.[3]

Similar terrorist attacks have resulted in the death or injury of other United States and Israeli citizens ("Intervenors"). Id. at 3. Consequently, five other lawsuits have been brought against the Bank alleging that the Bank "allowed and facilitated transfers of funds to the [responsible] terrorist organizations," id. at 3–4, and those cases are also currently being litigated in the Southern District of New York or the New York Supreme Court ("intervenors' lawsuits"), see id. at 3 n.1. One of these five lawsuits, Moriah v. Bank of China, 12-cv-1594 (SAS) (S.D.N.Y.), is also being litigated before Judge Scheindlin. Id. "[T]here is a discovery coordination order in effect which provides that discovery shall be coordinated between [the two cases pending before Judge Scheindlin] and all discovery generated in Wultz is usable in Moriah." Id.

**B. The Instant Action**

On September 18, 2013, former Israeli national security officer Uzi Shaya was personally served with a nonparty subpoena by process server Ted Metzger while he was in the District of Columbia. Id. at 4; Israel's Mem. at 3; Israel's Mem., Exhibit ("Ex.") A (Subpoena). The subpoena commanded Mr. Shaya to appear at a deposition to be held at 5301 Wisconsin Avenue, Suite 800, Washington, D.C., on November 25, 2013, in connection with the Wultz litigation. Israel's Mem., Ex. A (Subpoena). The intervenors contend that "by agreement with Mr. Shaya, the location of the deposition was moved to New York, and Judge Scheindlin agreed that the deposition could be conducted in her courtroom and that she herself would preside over the deposition." Intervenors' Mot. at 4. On November 15, 2013, Judge Scheindlin entered an order

---

[3] For ease of reference, the Court will use the page numbers assigned to this filing by the Court's Electronic Case Filing System instead of the page numbers designated on the filing, because they appear to be incorrect.

3

specifying that "[t]he Court is scheduled to supervise Uzi Shaya's deposition on November 25, 2013," Order at 1, Wultz v. Bank of China, Ltd., No. 11-cv-1266 (SAS) (S.D.N.Y. Nov. 15, 2013), ECF No. 394, and set forth the rules that would govern that deposition, id. at 1–4. In anticipation of the deposition, Judge Scheindlin contacted the State of Israel's Department of International Affairs to inform it of the upcoming deposition and to ascertain the State of Israel's position on Mr. Shaya's participation. Judge Scheindlin's Letter, Wultz v. Bank of China, Ltd., No. 11-cv-1266 (SAS) (S.D.N.Y. Sept. 27, 2013), ECF No. 337.

On November 4, 2013, the intervenors filed a motion in this Court requesting that they be "[p]ermitt[ed] . . . to intervene in [the above-captioned miscellaneous] case regarding the enforcement and other matters related to the subpoena served . . . on Uzi Shaya." Proposed Intervenors' Motion to Intervene at 8, No. 13-mc-1248 (RBW) (D.D.C. Nov. 4, 2013), ECF No. 1. On November 15, 2013, Israel, which is not a party to the New York litigation or the intervenors' lawsuits, filed its motion with this Court to quash the subpoena served on Mr. Shaya. Israel's Mot. at 1. On November 19, 2013, unaware of Judge Scheindlin's previously-entered orders pertaining to Mr. Shaya's deposition, this Court entered an Order staying the deposition pending the resolution of Israel's motion to quash, instituting a briefing schedule, and ordering that a motions hearing be convened on January 15, 2014, to resolve the motion to quash. Order, ECF No. 5. On November 26, 2013, after the plaintiffs and Israel consented, the Court granted the intervenors' motion to intervene and consolidated the cases. Minute Order, Nov. 26, 2013.

On December 2, 2013, after changes to the Federal Rules of Civil Procedure became effective, the intervenors filed their motion to strike or transfer. Intervenors' Mot. at 1–2. Israel

4

opposed the intervenors' motion as to all relief requested. The Court then stayed the January 15, 2014 hearing pending resolution of the intervenors' motion.

## II. LEGAL ANALYSIS

The intervenors request that this Court either strike Israel's motion to quash, Intervenors' Mot. at 1, or alternatively "transfer[] this proceeding, including the question of whether the motion to quash should be stricken, to Judge Shira Scheindlin of the United States District Court for the Southern District of New York, where the underlying action is pending," id. at 2. Because striking Israel's motion would have the same impact on Mr. Shaya's deposition as would denying Israel's motion, for the reasons discussed in this Opinion, the Court concludes that resolution of these requests should be addressed by Judge Scheindlin. In deciding which court should resolve these requests, the only issue addressed in this Opinion is the merits of the intervenors' request that this Court transfer Israel's motion to quash to the Southern District of New York for resolution.

### A. Local Rule 7(m)

Israel first argues that the Court should not even address the merits of the intervenors' motion to strike or transfer, but instead "should deny [the i]ntervenors' motion in its entirety because [the i]ntervenors did not confer with counsel for the State of Israel about the relief requested before filing the motion," as is required by Local Civil Rule 7(m). Israel's Opp'n at 1. However, Israel concedes that its counsel received an email from the intervenors' counsel indicating that "he would oppose any future motion to quash" on the basis that "Israel was required to intervene in an action in order to contest the subpoena and assert immunity on behalf of the Israeli Official." Id. at 2–3. In their reply, the intervenors' counsel confirms for the Court that he sent an email to Israel's counsel "to discuss the merits of the instant motion" and that the

5

email exchange "made clear that the respective positions of the [i]ntervenors[] and Israel [were] (and remain[]) irreconcilable." Intervenors' Reply at 1. Israel maintains that any email communication should be discounted because the discussion must be "'either in person or by telephone'—not by email," and that the failure to comply with the Local Rules mandates denial of the intervenors' motion. Israel's Opp'n at 3.

Israel's reliance on the version of the Local Rule cited as support for its position is misplaced, as an amended version of this Court's Local Rules was adopted on October 1, 2013. Changes to Local Rules, http://www.dcd.circdc.dcn/km-portal/sites/portal/files/LCRammendOct13.pdf. The 2013 amended Local Rule 7(m) states:

> Before filing any nondispositive motion in a civil action, counsel <u>shall discuss</u> the anticipated motion with opposing counsel in a good faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement. . . . A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

Local Civ. R. 7(m) (2013) (emphasis added). The members of this Court eliminated the somewhat archaic requirement that communication between counsel could only be conducted in person or by telephonic communication—the Rule now implicitly allows for communication via email. See id. Although it is true that the intervenors did not include the statements required by Rule 7(m) in their motion "that the required discussion occurred, and . . . whether the motion is opposed," because the intervenors' counsel did communicate with Israel's counsel regarding the matter and Israel had the opportunity to respond to the intervenors' motion, and since Israel relies on an incorrect version of the Local Rules, the Court will address the merits of the intervenors' motion.

## B. The Applicability and Application of Amended Rule 45

Changes to Rule 45 of the Federal Rules of Civil Procedure went into effect on December 1, 2013, and were intended to apply "insofar as just and practicable, [to] all proceedings then pending." Supreme Court of the United States, Order Amending Federal Rules of Civil Procedure ¶ 2 (Apr. 16, 2013). Prior to the 2013 amendments, Rule 45 required that subpoenas be issued from the court where the deposition was to be taken, and the power to quash or modify a subpoena was reserved to that court. See Fed. R. Civ. P. 45(a)(2)(B), (c)(3) (repealed Dec. 1, 2013). Rule 45 as amended now requires that subpoenas be issued from "the court where the action is pending," Fed. R. Civ. P. 45(a)(2), but still permits the "court for the district where compliance is required [to] quash or modify the subpoena," Fed. R. Civ. P. 45(d)(3). However, now if "the court where compliance is required did not issue the subpoena, [that court] may transfer a motion under [Rule 45] to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).

Israel argues that "[a]pplying the new provision of Rule 45 retroactively to pending subpoenas . . . invites serious personal jurisdiction issues," Israel's Opp'n at 18, "would not be 'just and practicable' in this miscellaneous case" because "[t]ransfer at this stage would constitute a waste of litigation resources and would prejudice the State of Israel by requiring it to relitigate these same issues in a new jurisdiction under new law," id. at 16, and that "[w]hen the subpoena was issued, the rules required this Court to be designated as the issuing court, whereas the new rules define the 'issuing court' as the court where the underlying civil action is pending," id. at 17. Finally, Israel contends that because "[t]he Rules Committee overhauled the operation of Rule 45 and plainly intended the amendments to operate holistically, . . . amended Rule 45 is best read to apply prospectively under the circumstances here." Id. at 19.

7

Both Rule 86 of the Federal Rules of Civil Procedure and the law of this Circuit conflict with Israel's position. Rule 86(a)(2) directs this Court to apply amendments to the Rules "at the time specified by the Supreme Court [and to apply them to] proceedings after that date in an action <u>then pending</u> unless: (A) the Supreme Court specifies otherwise; or (B) the court determines that applying them in a particular action would be infeasible or work an injustice." Fed. R. Civ. P. 86(a)(2) (emphasis added). In accordance with this command, this Circuit, consistent with many other Circuits, has ruled that following changes in procedural law this Court must "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice." <u>Moore v. Agency for Int'l Dev.</u>, 994 F.2d 874, 878–79 (D.C. Cir. 1993) (quoting <u>Bradley v. Richmond Sch. Bd.</u>, 416 U.S. 696, 711 (1974)); <u>see also</u> <u>Gersman v. Grp. Health Ass'n</u>, 975 F.2d 886, 898–99 (D.C. Cir. 1992) (holding that when substantive rights do not change, but merely the remedy, that the law in effect at the time of the decision shall apply); <u>accord</u> <u>Michel v. United States</u>, 519 F.3d 1267, 1271 (11th Cir. 2008) (applying the December 2004 amended rules to a motion that was filed in May 2004); <u>Skinner v. Total Petroleum, Inc.</u>, 859 F.2d 1439, 1442 n.3 (10th Cir. 1988) (applying amended Rule 6 to a pending motion to dismiss filed prior to the Rule's amendment); <u>Hoffman v. N.J. Fed'n of Young Men's & Young Women's Hebrew Ass'ns</u>, 106 F.2d 204, 207 (3d Cir. 1939) (holding that it was immaterial that a motion was filed before the Rules were amended, and the amended rules would apply when the court entered judgment).

Because the Federal Rules and this Circuit require this Court to apply "the law in effect at the time it renders its decision," <u>Moore</u>, 994 F.2d at 879–80, and because as discussed next, the Court finds that applying the amended Rule does not implicate personal jurisdiction nor will it "work an injustice," the Court must apply the amended Rule 45 to the dispute at hand.

Therefore, since the text of Rule 45(a)(2) now explicitly requires that "[a] subpoena must [be] issue[d] from the court where the action is pending," Fed. R. Civ. P. 45(a)(2), and because the underlying litigation is not pending in this Court, this Court <u>could not</u> now have issued the subpoena at issue in accordance with Rule 45(a)(2). Thus, since the subpoena explicitly identifies the Southern District of New York as the court where the underlying action is pending, <u>see</u> Israel's Mem., Ex. A (Subpoena), pursuant to amended Rule 45 the Southern District of New York must be considered the issuing court, Fed. R. Civ. P. 45(a)(2). However, because Mr. Shaya was served in the District of Columbia and the subpoena commands his attendance here, this Court is the court where compliance is required. Fed. R. Civ. P. 45(c)(1).

**1. Personal Jurisdiction Over Mr. Shaya**

As an initial matter, much of Israel's concerns surrounding the retroactive application of Rule 45 arise from a misunderstanding that both Israel and the intervenors have made regarding the ramifications the transfer of Israel's motion to the New York district court for resolution will have on the <u>physical location</u> of Mr. Shaya's deposition.[4] Both Israel and the intervenors have incorrectly surmised that transferring the motion to quash would result in Mr. Shaya's deposition being physically conducted in New York. <u>See</u> Israel's Opp'n at 19–21; Intervenors' Mot. at 7–9. Nothing in the amended Rule would indicate that this presupposition is appropriate or correct. Pursuant to Rule 45, while the court where compliance is required may transfer <u>subpoena-related</u>

---

[4] This confusion is due in large part to the ambiguity of the relief the intervenors request in their pending motion. The intervenors request that "if the motion to quash for any reason is not stricken," that this Court "transfer[] this proceeding . . . to Judge Shira Scheindlin of the United States District Court for the Southern District of New York, where the underlying action is pending." Intervenors' Mot. at 2. The intervenors then outline how the deposition would be conducted in Judge Scheindlin's court. Based on the content of the intervenors' motion, it is unclear whether they are asking for both the motion to quash and the physical location of Mr. Shaya's deposition to be transferred to the Southern District of New York. For the reasons discussed, this Court is only able to transfer the pending motion to quash and motion to strike to Judge Scheindlin for resolution. The principles of personal jurisdiction as well as the text of Rule 45 preclude this Court from transferring the physical location of Mr. Shaya's deposition unless he consents to such transfer. <u>See</u> Fed. R. Civ. P. 45(c)(1), (f).

9

motions to the court where the underlying action is pending, the territorial limitations of Rule 45(c)(1) remain applicable. See Fed. R. Civ. P. 45(c)(1), (f). Therefore, should the Southern District of New York deny the motion to quash, unless Mr. Shaya consents to being deposed in New York, nothing in Rule 45 indicates that he would be deposed anywhere other than at 5301 Wisconsin Avenue, Suite 800, Washington, D.C., the address listed on the face of the subpoena.

This clarification regarding the physical location where Mr. Shaya's deposition will be taken moots Israel's arguments pertaining to the "serious personal jurisdiction issues" that it believes are implicated by applying the amended rules. Israel's Opp'n at 18. Israel maintains that "because the subpoena here was served under the 'old' rule the New York court has no basis to exercise personal jurisdiction over [Mr. Shaya] and could neither compel his deposition nor hold him in contempt" because service was effected on Mr. Shaya in the District of Columbia.[5] Israel's Opp'n at 18 (citing Fed. R. Civ. P. 45(b)(2)(A), (B) (repealed Dec. 1, 2013)). However nothing in the amended Rule invokes questions concerning personal jurisdiction because, as has always been the case, the district where the subpoena is served maintains jurisdiction over all matters pertaining to subpoenas issued within its district. Fed. R. Civ. P. 45(d)(3)(A). The only "jurisdictional" change occasioned by the amendment of Rule 45 is that now the district where the subpoena was served, i.e. "the court where compliance is required," explicitly has the option of either resolving subpoena-related motions or transferring such motions to a more appropriate court for resolution—the court where the underlying litigation is pending. Fed. R. Civ. P. 45(f).

---

[5] If, as the intervenors assert, "by agreement with Mr. Shaya, the location of the deposition was moved to New York, and Judge Scheindlin agreed that the deposition could be conducted in her courtroom and that she herself would preside over the deposition," Intervenors' Mot. at 4, then Mr. Shaya has already consented to the personal jurisdiction of the Southern District of New York and this argument is therefore moot, cf. In re Sealed Case, 141 F.3d 337, 342 (D.C. Cir. 1980) (finding that if a nonparty "moves for a protective order in the court of the underlying action [he] thereby submits to that court's jurisdiction," and the jurisdictional problems resulting from transferring subpoena-related motions are cured); but see Israel's Opp'n at 19 ("[Mr. Shaya's] purported silence with respect to conducting a deposition in New York does not equate to consent to transferring the present motion to quash; they are separate considerations.") (emphasis in original).

10

Where perhaps once "Congress [through] the Rules [was] clearly . . . ready to sacrifice some efficiency in return for territorial protection for nonparties," In re Sealed Case, 141 F.3d 337, 341 (D.C. Cir. 1998), it appears now that Congress, through the Rules, has elevated the importance of efficiency and case management, Fed. R. Civ. P. 45(a)(2), (b)(2) (eliminating the intricate requirements delineating which court may issue a subpoena and instead mandating that subpoenas be issued by the court where the action is pending and subsequently served anywhere in the United States).

As noted earlier, the "place specified for the deposition" is 5301 Wisconsin Avenue, Suite 800, Washington, D.C., the address listed on the subpoena. See Israel's Mem., Ex. A (Subpoena). Despite the Intervenors' assertions and requests to the contrary, transferring the motion to quash to the Southern District of New York has no impact on where the deposition of Mr. Shaya will physically occur. Additionally, Israel incorrectly argues that should this Court apply the amended Rule 45 and transfer its motion to quash, such a decision would render the Southern District of New York unable to "compel [Mr. Shaya's] deposition [or] hold him in contempt." Israel's Opp'n at 18. In fact, amended Rule 45(g) specifically allows for such a scenario. See Fed. R. Civ. P. 45(g) ("The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.").

### 2. Retroactive Application of Rule 45

Israel's only argument as support for its position that "manifest injustice" will result from the retroactive application of amended Rule 45 is the cost it will incur from the Court "requiring it to relitigate these same issues in a new jurisdiction under new law." Israel's Opp'n at 16.

11

Israel maintains that requiring further research would constitute "a waste of litigation resources," resulting in prejudice. Id. However, even applying the Southern District of New York's own Circuit authority, to the extent that authority conflicts with the law of this Circuit, Israel's argument fails because the cost of litigation alone does not amount to an unfair prejudice. Cf. Randall v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 110 F.R.D. 342, 345 (D.D.C. 1986) ("mere cost of litigation" in the Rule 60(b) motion context "does not constitute unfair prejudice"); EEOC v. Md. Cup Corp., 785 F.2d 471, 479 (4th Cir. 1986) (finding that the additional cost of $75,000 to comply with a subpoena was not unduly burdensome absent a showing that "gathering the information would threaten its normal business operations"); EEOC v. Citicorp Diners Club, Inc., 985 F.2d 1036, 1040 (10th Cir. 1993) (dismissing unduly burdensome argument based on inconvenience and "some expense" absent a showing that compliance with a subpoena would "disrupt and seriously hinder normal operations").

It is only the rare and extreme circumstance in which litigation costs result in prejudice—this is not such a circumstance. See e.g., Freund v. Fleetwood Enters., Inc., 956 F.2d 354, 363 (1st Cir. 1992) (ruling that a change to a procedural rule did not warrant remanding a case for a new trial because "[t]here is no reason to think that a second trial would produce a different result" and that the opposing party should not have "to endure the expense and inconvenience" that would result from relitigating the case when the outcome would not produce a different result). Transferring a motion to the jurisdiction where the underlying litigation is pending that will require few, if any, modifications of the written submissions, does not rise to the level of unfair prejudice. Therefore, the cost that may be incurred to prosecute its motion in the Southern District of New York rather than in the District of Columbia is de minimis.

### C. The District of Columbia Circuit's Rule 45 Analysis

Israel asserts that the intervenors' motion to transfer fails because "the [District of Columbia] Circuit has held that motions to quash cannot be transferred under any circumstances." Israel's Opp'n at 15 (citing In re Sealed Case, 141 F.3d 337 (D.C. Cir. 1998)). However, applying the analysis mandated by In re Sealed Case to Rule 45 in its amended state yields an outcome opposite to what was permissible in 1998. This is because In re Sealed Case was predicated on a textual reading of Rule 45 as drafted at that time, resulting in a finding that the rule "offer[ed] no authorization to transfer a motion to quash [a subpoena] and seems at least implicitly to forbid it" because "nothing in the Rules even hints that any other court may be given the power to quash or enforce [another court's subpoenas]." 141 F.3d at 341. In reaching this conclusion, the Circuit instructed district judges that when determining the legality of transferring subpoena-related motions, "the place to start . . . is the text of Rule 45." Id. at 340–41. Applying that directive, the pertinent provisions of Rule 45 must be construed to now read:

> When the court where compliance is required [is not the court where the underlying action is pending, the court where compliance is sought] . . . may transfer a [subpoena-related] motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances . . . . [Both t]he court for the district where compliance is required—and also, after a motion is transferred, the [court where the underlying action is pending]—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

Fed. R. Civ. P. 45(f), (g).

Based on the analysis required by In re Sealed Case, the text of Rule 45 not only "hints that [another] court may be given the power to quash or enforce [a subpoena]," In re Sealed Case, 141 F.3d at 341, it explicitly permits it in circumstances where "the person subject to the subpoena consents or if the court finds exceptional circumstances," see Fed. R. Civ. P. 45(f); see also In re Sealed Case, 141 F.3d at 343 (Henderson, J. concurring) ("I stop short, however, of

13

deciding, as does the majority, that a district court lacks authority to order a transfer. Assuming such authority exists, it should be reserved for the extraordinary, complex case in which the transferee court is plainly better situated to resolve the discovery dispute."). Because the text of amended Rule 45 specifically allows for transfer, and as discussed next, exceptional circumstances exist that warrant transfer, Israel's motion to quash and all related filings, including the intervenors' motion to strike, will be transferred to the Southern District of New York for resolution.

1. **Exceptional Circumstances**

As previously indicated, although this Court is not entirely convinced that Mr. Shaya has not already agreed to be deposed in New York given the extensive preparations and security measures taken by Judge Scheindlin, the Court finds that despite Israel's assertions to the contrary, see Israel's Opp'n at 19–21, exceptional circumstances do exist in this case. Due to the highly complex and intricate nature of the underlying litigation, Judge Scheindlin is in a better position to rule on the intervenors' motion to quash or modify the subpoena due to her familiarity with the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation. Any ruling by this Court will inevitably disrupt Judge Scheindlin's management of the two highly complex actions currently pending in her court, as well as impact four other separate but related actions pending in the New York Supreme Court, about which this court has even less familiarity. Intervenors' Mot. at 3 n.1 (listing six cases pending in New York state court and the Southern District of New York, two of which are being litigated in tandem before Judge Scheindlin, and all apparently subject, to some degree, to two coordinated discovery orders); see also Memorandum in Support of Proposed Intervenors' Motion for Intervention at 1–2, No. 13-mc-1248 (RBW) (D.D.C. Nov. 4, 2013), ECF No. 1.

Other courts have found exceptional circumstances warranting transferring subpoena-related motions to quash when transferring the matter is in "the interests of judicial economy and avoiding inconsistent results." FTC v. A+ Fin. Ctr., LLC, No. 1:13-mc-50, 2013 WL 6388539, at *3 (S.D. Ohio Dec. 6, 2013). The advisory committee notes to Rule 45(f) embrace these factors, stating that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45(f) advisory committee's note (2013). Both circumstances are applicable here. Accordingly, the Court finds that there are exceptional circumstances warranting the transfer of the motions pending before this Court to the Southern District of New York.

   a. **Consistency in Rulings**

Israel's counsel represents that there are other high-level Israeli non-parties who may be served with subpoenas. See Intervenors' Supp. Mem., Ex. A (Bellinger Letter) at 1 (indicating that the intervenors "intend to take an oral deposition of Major General Yaacov Amidror" and "a deposition of Ambassador Vilnai"); but see id. (indicating that there has not yet been "[a] valid and properly served subpoena . . . to secure the testimony of" the other Israeli officials). In the event those subpoenas are served in any district other than the Southern District of New York, this Court's resolution of Israel's motion to quash as related to its assertion of the foreign state secrets privilege might differ from another court's resolution of such a motion, further impacting the litigation pending before Judge Scheindlin.[6] This potential for inconsistent rulings should be

---

[6] In this Court's opinion, the interest of obtaining consistent rulings on the issues presented in Israel's motion to quash would be best served by one judicial officer—Judge Scheindlin—resolving any motion raising such issues. However, if subpoenas are served in other districts, it is possible that another court may disagree with this Court's assessment and instead may be inclined to reach the merits of a similar motion to quash. While this Court cannot require that other judges accept its position on this issue, hopefully this Court's resolution of the motion to quash will persuade other judges to transfer any other similar motions to Judge Scheindlin to avoid inconsistent rulings. In
(continued . . .)

15

avoided and weighs in favor of a single judicial officer deciding all of these disputes. And transferring the motion to quash pending before this Court advances the objective of avoiding inconsistent rulings. Moreover, even if other former or current Israeli officials have not been served with subpoenas, the resolution of the Shaya subpoena alone potentially impacts multiple cases, and the Court therefore disagrees with Israel's characterization of the issue as "unique to this ancillary proceeding." Israel's Opp'n at 20.

### b. Judge Scheindlin's Prior Involvement in the Underlying Litigation

Contrary to Israel's view that Judge Scheindlin "has not taken a position on any of the [state secrets privilege] issues raised in the motion to quash itself," Israel's Opp'n at 21, Judge Scheindlin has in fact taken an interest and active role in resolving any potential state secrets claim. For example, on September 27, 2013, Judge Scheindlin asked Israel's Department of International Affairs to "offer a timeframe for the Israeli government's response to [the Southern District of New York's] July 2 inquiry regarding Mr. Shaya's ability to participate in a deposition." Judge Scheindlin's Letter at 1, Wultz v. Bank of China, Ltd., No. 11-cv-1266 (SAS) (S.D.N.Y. Sept. 27, 2013), ECF No. 337. Further, Judge Scheindlin has expressed a desire to personally supervise the deposition of Mr. Shaya in her courtroom and set specific conditions to protect the privilege of any information that Mr. Shaya is asked to divulge.[7] Order at 1–4, Wultz v. Bank of China, Ltd., No. 11-cv-1266 (SAS) (S.D.N.Y. Nov. 15, 2013), ECF No.

---

( . . . continued)
any event, even if other courts faced with a similar question opt to reach the merits of any such motions, this Court finds that Judge Scheindlin, as the judge presiding over the underlying case, should have the first say on the matter, and her guidance will hopefully promote consistency.

[7] Pursuant to Rule 45 this would be permissible only if Mr. Shaya consents to being deposed in New York and thereby submits himself to the Southern District of New York's jurisdiction. As the Court previously indicated, however, Mr. Shaya has likely already consented to this, and thus, has already consented to that court exercising personal jurisdiction over him.

16

394. Therefore, this Court finds that Judge Scheindlin has been intimately involved in Israel's asserted state secrets claim, and accordingly is better informed to resolve this issue.

### III. CONCLUSION

For the foregoing reasons, the intervenors' motion will be granted in part and denied in part. Accordingly, the Court denies with prejudice the Intervenors' request to transfer the physical location of Uzi Shaya's deposition to the Southern District of New York, to the extent that such relief has, in fact, been requested by the intervenors, and grants the component of the intervenors' motion that seeks to transfer Israel's motion to quash to the Southern District of New York for resolution. Therefore, The State of Israel's Motion to Quash and all applicable filings, including the intervenors' motion to strike Israel's motion to quash, are transferred to the United States District Court for the Southern District of New York. The Clerk of this Court is directed to terminate all remaining deadlines this Court has set and transfer this case forthwith.

**SO ORDERED** this 30th day of May, 2014.[8]

REGGIE B. WALTON
United States District Judge

---

[8] An order consistent with this memorandum opinion shall be issued contemporaneously.